## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**STEVEN M. FREW, on his own behalf**
**and on behalf of those similarly situated,**

**Plaintiff,**

**vs.**

**TOLT TECHNOLOGIES SERVICE**
**GROUP, LLC, a Florida corporation,**

**Defendant.**

**CASE NO.:  6:09-CV-49-ORL-19-GJK**

**DEFENDANT'S MOTION FOR**
**SUMMARY JUDGMENT**

**(Oral Argument Requested)**

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Tolt Technologies Service Group, LLC ("Tolt") hereby moves for summary judgment in its favor and against Plaintiff Steven M. Frew ("Frew") on the ground that there is no genuine issue of material fact and Tolt is entitled to judgment as a matter of law.  This Motion is supported by the following Memorandum of Points and Authorities and attached exhibits.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

Frew worked as a Field Service Technician for Tolt, visiting Tolt's customers in the field to repair and maintain their cash registers, printers, and other point-of-sale equipment.  During the relevant time period, Frew regularly recorded, and was paid for, significant amounts of overtime at levels that varied from one week to the next.  During other weeks, Frew abided by Tolt's Flextime policy and stopped working if he reached forty hours before the end of the workweek.  In this Fair Labor Standards Act ("FLSA") action, Frew now claims that he worked additional overtime off the clock beyond that

which he reported to Tolt.  However, Frew has no idea or record of how much off-the-clock work he allegedly performed beyond his unsupported estimation of "five to ten hours each week."  In any event, Tolt neither knew nor had reason to know of Frew's alleged off-the-clock work; even according to Frew, on the only occasions overtime was discussed with managers, the discussion involved Tolt's policy of Flextime in lieu of overtime, and Tolt's requirement that overtime needed to be approved in advance, not that Frew was working overtime hours without compensation.  For all of these reasons – any one of which provide an independent basis for summary judgment – Tolt is entitled to judgment as a matter of law. [1]

## II.   UNDISPUTED FACTUAL BACKGROUND

### A.   The Parties

1.  Tolt provides technology support to retail chains.  [Deposition of John C. Setzler ("Setzler Depo.") at 6:25-7:13] [2]  Specifically, Tolt provides repair services to grocery stores and other customers for their point-of-sale equipment, such as cash registers and printers.  [Id.]

2.  Frew is a former Tolt employee.  [Complaint & Demand for Jury Trial ("Complaint"), ¶ 1]  He was hired by Tolt as a part-time Field Service Technician for the Tampa, Florida area on November 9, 2005. [Declaration of Judy M. Neff ("Neff Dec."), ¶ 3 (attached hereto as Exhibit "C")]

---

[1]   Frew initially purported to bring this action on his own behalf and on behalf of others allegedly similarly situated, but no other individual opted into this action in accordance with 29 U.S.C. § 216(b).  Thus, Tolt requests that the collective action allegations of Frew's Complaint be dismissed.

[2]   Relevant excerpts from the deposition of John Setzler, Tolt's Senior Regional Manager, are attached hereto as Exhibit "B."  [Setzler Depo. 6:3-4]

3.  Frew remained in that position until June 20, 2006, when he became a full-time Field Service Technician.  [Exhibit C, ¶ 4]  Frew worked as a full-time Field Service Technician until August 31, 2008, when he was laid off during a reduction-in-force.  [Exhibit C, ¶ 5]

4.  Thereafter, Frew worked for Tolt on a temporary basis between September 21, 2008, and October 23, 2008, as a Temporary Deployment Installer. [Exhibit C, ¶ 6]

5.  Throughout his employment with Tolt, Frew was classified as a non-exempt employee under the FLSA, 29 U.S.C. § 201 et seq., and as such was paid on an hourly basis for each hour worked, including overtime at one and one-half times his regular rate of pay.  [Exhibit C, ¶ 7]

**B.**     **The Time Period at Issue in This Lawsuit**

6.  Frew's single-count Complaint alleges that "[d]uring [his] employment with Defendants [sic], Plaintiff . . . regularly worked overtime hours but [was] not paid time and one half compensation for same."  [Complaint ¶ 12]

7.  However, Frew is *not* making a claim for allegedly unpaid wages for the period of time he worked as a part-time Field Service Technician prior to June 20, 2006.  [Plaintiff's Verified Answers to Defendant's First Set of Interrogatories, No. 8, attached hereto as Exhibit "D"]

8.  Nor does Frew claim he worked any unrecorded or uncompensated hours after September 6, 2008, when he worked as a Temporary Deployment

Installer.   [Deposition of Steven M. Frew ("Frew Depo.") 26:5-9;[3] Plaintiff's Responses to Defendant's First Request for Admissions, No. 2, attached hereto as Exhibit "L"]

9.   Thus, the timeframe at issue in this lawsuit is part of the period during which Frew was employed as a full-time Field Service Technician, which was June 20, 2006, through August 31, 2008.[4]   [Exhibit C ¶¶ 4-5]

10.   During the relevant time period, Frew was paid for all of the time and overtime that he recorded - a total of 768.58 overtime hours, ranging from zero to 57.5 hours in a given pay period, for an average of 13.25 overtime hours per pay period.   [Revised Verified Summary of Hours for Steven Frew, attached to Exhibit C as Exhibit "4"]

**C.   Frew's Primary Job Duties**

11.   Frew's primary job duties consisted of making service calls and meeting service level expectations for Tolt's customers in the geographic zone for which he was responsible, which consisted primarily of the St. Petersburg-Tampa area.   [Frew Depo. 14:5-12, 15:21-23, 23:18-21; Setzler Depo. 24:11-25:2]

12.   Specifically, Frew was responsible for resolving trouble tickets for point-of-sale equipment, printers, and monitors for Tolt's customers.   [Frew Depo. 14:9-12, 23:18-21]   Frew also was responsible for performing

---

[3]   Relevant excerpts from the deposition of plaintiff Steven Frew are attached hereto as Exhibit "A".

[4]   Frew did not file his Complaint until January 8, 2009.   Thus, he is barred from recovering for any alleged violations of the FLSA that occurred before January 8, 2007, unless he can establish that Tolt willfully violated the FLSA, thereby extending the statute of limitations from two to three years.   29 U.S.C. § 255(a).   Frew cannot meet that burden.   *See* f.n. 11, *infra*.

preventative maintenance on customers' equipment when there was not a substantial amount of active customer-generated trouble tickets. [Frew Depo. 38:23-39:7]

13. Frew worked with minimal supervision. He worked out of his residence, did not report to an office, and did not have an assigned start time. [Frew Depo. 46:16-19; Setzler Depo. 17:12-21; 18:21-19:15] Rather, on a daily basis, he traveled from his residence to store to store to resolve trouble tickets. [Frew Depo. 33:20 - 34:25]

14. Frew was responsible for prioritizing his daily schedule based upon factors such as severity of the trouble tickets received and their relative geographic location. [Frew Depo. 33:20 - 34:17; Setzler Depo. 18:21 – 19:15; 35:3 – 11; Escobar Depo. 33:1-10][5]

15. Thus, and as discussed in more detail below, it was Frew's responsibility to accurately enter the time he spent working for the benefit of Tolt. [Frew Depo. 16:15 – 17:4; Setzler Depo. 16:25 – 17:8; 33:6 – 35:2 ("I trusted everyone to be honest when entering their time.")]

**D.     Tolt's Policies Regarding Recording Hours Worked and Payment of Overtime**

16. Pursuant to Tolt's policy, all non-exempt employees, including Frew, were to accurately report all hours worked, and falsifying time records could result in discipline, including termination. Tolt's Employee Guidebook (the "Handbook") expressly states:

---

[5]    Relevant excerpts from the deposition of Ray Escobar, Tolt's Senior Logistics Manager, are attached hereto as Exhibit "E." [Escobar Depo. 6:8-9]

> Accurately recording time worked is the responsibility of every "hourly paid" . . . employee. . . . **Time worked means: all the time actually spent on the job performing job-related duties.**  On a daily basis, non-exempt employees are expected to accurately record the time they begin and end their workday, as well as the beginning and ending time of each lunch period and the beginning and ending time of any split shift or departure from work for personal reasons.  Altering, falsifying, or tampering with time records . . . is a violation of company policy, and may result in discipline up to and including termination.  **It is an employee's responsibility to enter his or her own time records daily to certify the accuracy of all time recorded.**

[Tolt's Handbook p. 7-8, attached as Exhibit "1" to Exhibit C (emphasis added)][6]

17. With respect to overtime, it is Tolt's policy, in accordance with the FLSA, that all non-exempt, hourly-paid employees are paid at the overtime rate for all hours worked in excess of forty during any given workweek.  [Id.]

18. However, overtime is to be approved in advance.  [Id.; Setzler Depo. 19:16 – 20; Escobar Depo. 10:24 – 11:10; 25:10-23][7]    Tolt's policies regarding overtime are also expressed in the Handbook:

> Non-exempt (hourly paid) employees will be paid overtime in accordance with the Fair Labor Standards Act and the relevant state statutes in their state of employment.  Under the provisions of the Fair Labor Standards Act, a nonexempt employee will receive time and one-half their regular rate of pay for all hours worked over 40 during any one workweek.  Overtime is not a benefit; it is only to be authorized when business demands it.

\* \* \*

---

[6]    Frew signed an acknowledgement on November 9, 2005, confirming that he received a copy of the Handbook.  [Employee Handbook Acknowledgment, attached as Exhibit "2" to Exhibit C]

[7]    An employer's policy requiring that overtime hours must be approved in advance does not violate the FLSA.  *See Newton v. City of Henderson*, 47 F.3d 746, 747, 750 (5th Cir. 1995) (reversing judgment in favor of employee where defendant had a policy that required employees to obtain approval prior to working overtime).

> Non-exempt employees are required to notify their supervisor or manager of any need to work overtime and must receive prior approval before working additional time. Working unauthorized overtime may result in discipline up to and including termination.

[Exhibit "1" to Exhibit C]

19. When Field Service Technicians requested approval to work overtime in order to complete a job, "rarely would that not be approved." [Setzler Depo. 39:11 – 40:24; Escobar Depo. 11:19 – 12:2]

20. Notwithstanding Tolt's policy that overtime is to be approved in advance, Tolt nevertheless pays non-exempt employees for *all* overtime hours recorded, regardless of whether advance approval for the overtime was obtained. [Setzler Depo. 45:16 – 46:14; 53:9-23; Escobar Depo. 12:3-6]

21. Tolt also has a "Flextime" policy. [Exhibit C ¶ 8] Pursuant to that policy, individual employees manage their work hours based on business demands. [Id.] If an employee reaches 40 hours before their workweek is complete, they may be asked to take the rest of the week off in order to avoid working overtime. [Id.]

22. As discussed below, Frew routinely availed himself of all of the foregoing policies.

**E.    Frew Regularly Recorded, and Was Paid For, the Overtime Hours He Worked**

23. When Frew became a full-time Field Service Technician, he was scheduled to work five days each week, with two days off.[8] [Frew Depo. 23:7-12]

---

[8]    Frew often was on-call for emergency tickets outside of normal working hours. [Frew Depo. 51:2 – 52:24] However, Frew testified that his lawsuit against Tolt does not

24. On a daily basis, Frew recorded the hours he worked by entering those hours into Tolt's payroll software program, which he accessed on his company-issued laptop computer.  [Frew Depo. 16:19 - 17:4; Exhibit C, at ¶ 11 and Exhibit "3"]

25. Frew testified that he regularly recorded overtime hours when he was a full-time Field Service Technician.  [Frew Depo. 31:2-4, 58:8-14]

26. Indeed, during his tenure as a full-time Field Service Technician, which spanned 58 bi-weekly pay periods, Frew recorded, and was paid for, 768.58 hours of overtime.   [Revised Verified Summary of Hours for Steven Frew, attached to Exhibit C as Exhibit "4"]

27. Thus, Frew recorded, and was paid for, an average of 13.25 hours of overtime each pay period he worked as a full-time Field Service Technician.  [Id.][9]

**F.      Frew's Claim of Uncompensated Overtime**

28. As the basis for his lawsuit, Frew "guesses" that he only reported "between 40 and 45" hours each week to Tolt while he was a full-time Field Service Technician, but that during that same time period he actually worked between 45 and 55 hours per week.  [Frew Depo. 24:1-21]

---

involve the time that he was on-call or the time spent going out on calls after hours. [Frew Depo. 52:19-24]  In any event, "[a]s a matter of law, an employee is not 'working' simply because that employee must be on call if needed."  *Gaylord v. Miami-Dade County*, 78 F. Supp. 2d 1320, 1325 (S.D. Fla. 1999) (citing *Birdwell v. City of Gadsden*, 970 F.2d 802, 808-09 (11th Cir. 1992)).

[9]    When Frew worked as a Temporary Deployment Installer after being laid off from his position as a full-time Field Service Technician, he recorded, and was paid for, 69.5 hours of overtime over three pay periods.  [Exhibit "4" to Exhibit C]  Frew therefore recorded, and was paid for, an average of 23.16 hours of overtime each pay period while he was a Temporary Deployment Installer.  [Id.]

29. Frew's "guess" with respect to the hours of work he reported to Tolt (and for which he was paid) is proven inaccurate by the undisputed fact that he reported an average of 46.6 hours per week when he was a full-time Field Service Technician.  [Exhibit "4" to Exhibit C (reflecting Frew recorded an average of 13.25 hours of overtime each bi-weekly pay period while he was a full-time Field Service Technician)]

30. Frew did not keep track of his so-called "actual," or off-the-clock, work in any way.  [Frew Depo. 29:1-3; Plaintiff's Responses to Defendant's First Request for Production Nos. 3, 11, 15, attached hereto as Exhibit "M"]

31. No Tolt manager ever suggested to Frew, either verbally or in writing, that he should not record all of the hours he worked.  [Frew Depo. 26:14 - 28:20]

32. Nonetheless, Frew now claims that he worked additional hours he did not record out of fear that he would be evaluated poorly if he recorded all of the hours he claims to have actually worked.  [Frew Depo. 26:14 – 27:17; 56:15 – 57:10]

33. Despite reporting a significant amount of overtime during his employment with Tolt, however, Frew admitted he was generally evaluated "fairly well."  [Frew Depo. 56:15 - 57:10]

34. Frew also claims that Tolt's policy regarding Flextime, and the requirement that all overtime generally was required to be approved in advance "sen[t] a message . . . there [was] no overtime."  [Frew Depo. 26:14-23; 29:18 - 31:4]

35. However, Frew acknowledges that when a supervisor asked him to utilize Flextime when he reached forty hours before the end of the workweek, he stopped working and "[i]f I was told to go home I went home."  [Frew Depo. 29:18 - 30:7]

36. Frew claims that as a result he arbitrarily decided whether or not to record all of his overtime hours for a particular week based upon whether there were "projects going on that would involve expected overtime" and depending on "how much grief over overtime [he] was getting."  [Frew Depo. 58:15-25].

37. Frew also claims that despite clocking out for lunch, he often unilaterally decided to work through his 30-minute lunch period.  [Frew Depo. 39:11 - 41:12] [10]  However, Frew admitted that Tolt management never told him or implied that he should work through his lunch period.  [Id.]

38. To the contrary, when the subjects of overtime and meal breaks were raised during team conference calls, the directive from local managers was that the Field Service Technicians generally did not need to work overtime, primarily because of the availability of Flextime.  [Frew Depo. 56:15-24; Plaintiff's Verified Answers to Court's Interrogatories, No. 9, attached hereto as Exhibit "K"; Declaration of Nicole Modica ("Modica Dec."), ¶¶ 8, 9, 11 (attached as Exhibit "H"); Declaration of Lee Chandler ("Chandler Dec."), ¶¶ 8-11, 17 (attached hereto as Exhibit "I");

---

[10]   It is Tolt's policy that all non-exempt employees should take a thirty-minute unpaid meal break if they work at least five hours.  [Exhibit 1 to Exhibit C; Setzler Depo. 35:25 – 36:25]

Declaration of Robert White ("White Dec."), ¶¶ 7-10 (attached hereto as Exhibit "J")]

39. According to Frew, beginning in December 2006, during these conference calls that Tolt's local management held with Field Service Technicians, some Field Service Technicians sometimes complained about what Frew now characterizes as "non-compensated overtime."   [Exhibit K, No. 7; Frew Depo. 19:3 – 21:10; 55:15-57:10]   When asked what he meant by "non-compensated overtime," Frew testified that what some Field Service Technicians actually complained about was Tolt's policy of requiring pre-approval for overtime hours.   [Frew Depo. at 20:19 – 21:10 ("you were expected to keep your hours at a certain level and you should have a very good reason why you would not go over")]

40. Frew did not advise his managers, either in these conference calls or any other forum, that he was not recording all of the hours he allegedly was working.  [Frew Depo. 24:22-25]

## III.   <u>LEGAL ARGUMENT</u>

Frew alleges Tolt violated the FLSA because he "regularly worked overtime hours but [was] not paid time and one half compensation for same."   [Complaint ¶ 12] To prevail on his FLSA claim for unpaid overtime, Frew has the burden of proving (1) he "worked overtime without compensation"; (2) Tolt "knew or should have known of the overtime work"; and (3) "the amount of that work as a matter of just and reasonable inference."  *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1314-15, 1318 (11th Cir. 2007). The undisputed facts in the record demonstrate Frew cannot meet any element of this burden – let alone all three – entitling Tolt to judgment as a matter of law.

**A.   Frew Cannot Meet His Burden of Showing He Worked Uncompensated Overtime Hours**

Frew cannot demonstrate that he worked off-the-clock overtime hours in addition to those that he did record and for which he was paid.  *Gaylord v. Miami-Dade County*, 78 F. Supp. 2d 1320, 1325 (S.D. Fla. 1999) ("in order for [plaintiff] to recover for uncompensated overtime work under FLSA, he must show that . . . he worked overtime hours without compensation").

During the relevant time period, Frew recorded, and was paid for, nearly 800 hours of overtime—an average of 13.25 overtime hours each pay period when he was a full-time employee.  [Exhibits 3 and 4 to Exhibit C]  Frew's willingness to regularly record a substantial amount of overtime completely undermines his claim that he did not record all of the overtime hours he worked.  *Bjornson v. Daido Metal U.S.A., Inc.*, 12 F. Supp. 2d 837, 840 (N.D. Ill. 1998) (finding insufficient evidence that plaintiff worked uncompensated overtime hours to withstand summary judgment because plaintiff's "alleged reluctance to submit overtime claims is flatly belied by his own demonstrated willingness to do just that," and concluding that plaintiff's "consistently-presented and always-honored claims, . . . which totaled 694 hours of overtime . . . directly negate [his] newly-claimed diffidence"); *see also Slattery v. HCA Wesley Rehab. Hosp. Inc.*, 83 F. Supp. 2d 1224, 1230 (D. Kan. 2000) (granting summary judgment for employer because plaintiff's "statement she was 'afraid' to report her overtime is belied . . . by her admission that on a number of occasions she did report overtime" and "received compensation for the reported overtime").

In addition, Frew's conjecture that Tolt's Flextime policy and  its policy that all overtime was generally required to be approved in advance – both of which are completely lawful – somehow "sen[t] a message" that Frew was expected to work off the

clock is not enough to support even an inference that he worked uncompensated overtime hours. *Newton v. City of Henderson,* 47 F.3d 746, 747, 750 (5th Cir. 1995) (reversing judgment in favor of employee on FLSA claim where defendant had a flextime policy and a policy requiring employees to obtain permission prior to working overtime); *Whitaker v. Pacific Enterprises Oil Co.*, 956 F.2d 1170 (10th Cir. 1992) (unpublished opinion) (employer's discouragement of overtime work does not violate the FLSA); *Bjornson*, 12 F. Supp. 2d at 840-41 (finding that where plaintiff alleged he did not record all of the overtime hours he worked due to his fear of a "'big hassle' if he did so" was no more than "subjective speculation" that did not support a conclusion that he worked uncompensated overtime hours).

Moreover, Frew's current assertion that he worked an average of five to 10 off-the-clock hours each week is belied by his actual pattern of recording varying amounts of overtime hours from one pay period to the next.  For example, Frew recorded 32 hours of overtime for the pay period ending January 13, 2007, 19.5 hours of overtime for the pay period ending January 27, 2007, 20 hours of overtime for the period ending February 10, 2007, and 26.5 hours of overtime for the pay period ending February 24, 2007.  [Exhibit 4 to Exhibit C]  Indeed, Frew's pre-lawsuit conduct, which included recording nearly 800 hours of overtime, is entirely inconsistent with his present claim that he was reluctant to, and therefore did not, record all of his overtime hours.   Accordingly, Frew cannot carry his burden of demonstrating that he worked uncompensated overtime hours:

> Post hoc deposition testimony, which is directly at war with [plaintiff's] own actual conduct and recordkeeping, has not—even with the benefit of reasonable inferences— created a genuine factual issue that would enable a reasonable factfinder to find that . . . [plaintiff] actually worked more hours than he recorded in his payroll book.

*Bjornson*, 12 F. Supp. 2d at 842.

**B.**     **Tolt Neither Knew Nor Had Reason To Know That Frew Allegedly Worked Uncompensated Overtime Hours**

For an employer to be liable under the FLSA for alleged off-the-clock work, the employer must have had actual or constructive knowledge that the plaintiff worked uncompensated overtime hours. *Allen*, 495 F.3d at 1314 (to prevail on FLSA claim for unpaid overtime hours, plaintiff must demonstrate the employer "knew or should have known of the overtime work"); *Gaylord*, 78 F. Supp. 2d at 1325 ("in order for [plaintiff] to recover for uncompensated overtime work under FLSA, he must show that . . . the [employer] had knowledge, or should have had knowledge, of his overtime work").

In this case, even assuming Frew did work uncompensated overtime hours—an assumption unsupported by the record—Tolt had no knowledge that Frew worked those hours. [Escobar Depo.10:21-23; Setzler Depo. 53:24 - 54:9; Frew Depo. 24:22-25; Declaration of John C. Setzler ("Setzler Dec.") ¶¶ 5 – 7 (attached hereto as Exhibit "F"); Declaration of Ray Escobar ("Escobar Dec.") ¶¶ 4-7 (attached hereto as Exhibit "G")] Thus, summary judgment in Tolt's favor is appropriate. *Bjornson*, 12 F. Supp. 2d at 842 (even if the court "were to credit [plaintiff's] assertion that he worked extra uncompensated hours," the employer "would still be entitled to summary judgment . . . because [plaintiff] failed to establish [the employer] knew that he had performed uncompensated overtime").

**1.**     **The "Complaints" During Periodic Conference Calls Did Not Put Tolt on Notice that Frew Allegedly Was Working Unrecorded Hours**

Frew contends that "non-compensated overtime" was periodically discussed during conference calls in which Field Service Technicians and their local supervisors

participated starting in December 2006. [Exhibit "K", No. 7][11]  However, when pressed to describe the nature of the complaint which he now self-servingly characterizes as "non-compensated overtime," Frew conceded the actual complaint was about Tolt's policy of requiring advance approval before working overtime.  [Frew Depo. at 20:19-21:10 ("you were expected to keep your hours at a certain level and you should have a very good reason why you would not [sic] go over")]

Thus, Frew himself concedes that the complaints allegedly made during weekly conference calls were *not* that certain Field Service Technicians were working off the clock; rather, certain Field Service Technicians did not like obtaining advance approval before working overtime or taking flextime in lieu of overtime.   Frew's acknowledgement of the actual nature of the discussion is consistent with testimony from other participants in the periodic conference calls – both managers and other Field Service Technicians.  [Setzler Dec. (Exhibit "F"), ¶¶ 5-6; Escobar Dec. (Exhibit "G"),  ¶¶ 5-6; Modica Dec. (Exhibit "H"), ¶ 8; Chandler Dec. (Exhibit "I"), ¶¶ 8 - 9; White Dec. (Exhibit "J"), ¶ 7]

Complaints about requirements that Field Service Technicians should avoid working overtime without first obtaining approval, and that they must justify any overtime hours worked, is entirely insufficient to put Tolt on notice that Frew was

---

[11]   The fact that Frew claims the subject of overtime was first raised in December 2006 completely undermines any claim that Tolt knew or should have known Frew was allegedly working so-called "non-compensated overtime" prior to December 2006, much less that Tolt willfully disregarded the FLSA.  Moreover, Frew did not file his Complaint until January 8, 2009.  He therefore is barred from recovering for any alleged violations of the FLSA occurring before January 8, 2007, unless he can establish that Tolt willfully violated the FLSA, thereby extending the statute of limitations from two to three years. 29 U.S.C. § 255(a).  Tolt did not violate the FLSA in any respect, either negligently or willfully.  *Allen*, 495 F.3d at 1324 ("If an employer acts unreasonably but not recklessly in determining its legal obligation under the FLSA, then its actions should not be considered willful and the two-year statute of limitations should be applied.").

working hours he claims he was not recording. *Cf. Bailey v. County of Georgetown*, 94 F.3d 152, 157 (4th Cir. 1996) (holding that although the County's payroll supervisor had been told by the sheriff's secretary that "some of the deputies were not recording all of their hours" and one deputy told the payroll supervisor "he had not reported 'a couple of hours' on his time sheet," "those apparently isolated incidents were not sufficient to put the County on notice that, over the three-year period in question, deputies routinely did not report all of the hours they worked").[12]

Moreover, Frew testified that in response to the overtime and Flextime issues raised during the conference calls, supervisors would remind the Field Service Technicians that they "did not need to work overtime hours." [Exhibit K, No. 9; Frew Depo. 56:15-24] Tolt had no reason to know that Frew was not following this directive but was instead secretly working some overtime hours, particularly in light of the fact that Frew *continued* both to record overtime hours - without retribution - and avail himself of Flextime. [Exhibit 4 to Exhibit C; Frew Depo. 29:18-30:7; Escobar Depo. 21:2-5; 23:8-11]. *See Slattery*, 83 F. Supp. 2d at 1231 (finding employer had no knowledge that plaintiff was working unreported overtime hours where plaintiff was specifically told not to work overtime hours); *Bjornson*, 12 F. Supp. 2d at 840-41 (granting summary judgment in favor of employer where plaintiff "admitted that he was never told that he had to perform uncompensated overtime").

In sum, the undisputed evidence confirms the only instructions Frew received—either from his supervisors or in the form of a written policy—were that he generally did not need to work overtime, to obtain approval if he did, and to record all of the hours he

---

[12]   Tolt properly compensated technicians for all overtime worked, even when advance approval was not obtained. *See Section II.D.20, supra.*

worked in any event.  [Frew Depo. 56:15-18; Exhibit 1 to Exhibit C][13]  Frew testified that

he continued to work overtime even after being advised he did not need to do so because

"part of our evaluation was based upon getting tickets done in a timely manner," and he

did not want to get "grief" over working overtime.  [Frew Depo. 56:25 – 57:10; 58:15-

25][14]  Frew allegedly was concerned that if management knew about all of the hours he

claims he was working, his "performance evaluation would reflect that . . . tickets were

not serviced in a timely manner."  [Frew Depo. 27:6-17]

    Frew's stated justification for underreporting his hours confirms he *intentionally

concealed* his alleged off-the-clock work from Tolt.  Summary judgment is proper for

this reason alone.    *Allen*, 495 F.3d at 1321 ("There is no violation of the FLSA where

the employee performs uncompensated work but deliberately prevents his or her

employer from learning of it."); *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413,

414 (9th Cir. 1981) (where the "employee fails to notify the employer or deliberately

prevents the employer from acquiring knowledge of the overtime work, the employer's

failure to pay for the overtime hours is not a violation of" the FLSA); *Bjornson*, 12 F.

---

[13]    The vague allegation of Frew's Complaint that he performed work "for which no
provisions were made . . . to properly pay Plaintiff" is flatly incorrect.  [Complaint ¶ 8]
As discussed previously, Frew was to record all hours he worked by entering his time
into Tolt's payroll software program.  [Frew Depo. 16:19 – 17:4]  This included, without
limitation, any preliminary work, postliminary work, and travel time.  [Setzler Depo.
33:6-19, 34:5 - 35:2, 38:4-16, 43:8-18, 48:3-6, 60:16-19; Escobar Depo. 24:3-11, 37:25 –
38:6]

[14]    The only other basis Frew identifies for his alleged belief that, despite Tolt's
unequivocal instructions to the contrary, he should not record all of his hours of work
were conversations with co-workers that took place "during the first few weeks of
employment" (i.e., in late 2005 when Frew was a part-time employee) whose advice was
never subsequently confirmed with a supervisor.  [Exhibit "D", No. 10; Frew Depo.
28:13-25]  *See Bjornson*, 12 F. Supp. 2d at 840 - 41 (rejecting plaintiff's attribution to
employer's "corporate culture" as reason for failing to submit all overtime, particularly
where, as in Frew's case, plaintiff "suffered no adverse job consequences as a result of
his requests for overtime.").

Supp. 2d at 842 (concluding that "the record calls for a conclusion as a matter of law that [the employer]" did not violate the FLSA where plaintiff "admit[ted] not only that he failed to record or submit his hours, but also that he never otherwise informed . . . management directly of his asserted extra work").[15]

> 2. **Frew's Submission of Time Records that Allegedly Do Not Reflect All of His Overtime Hours Requires Summary Judgment in Tolt's Favor**

Frew was expected to manage his own work and his own schedule. He worked out of his residence and did not report to an office where he might have regular contact with supervisors. [Frew Depo. 33:20 – 34:25, 46:16-19; Setzler Depo. 17:12-21, 18:21-19:15, 35:3-11; Escobar Depo. 33:1-10] Thus, the only way that Tolt management could have known if Frew was working uncompensated overtime hours is if he had advised them of those hours. *See Bjornson*, 12 F. Supp. 2d at 842 (granting summary judgment in favor of employer where supervisor never saw plaintiff working uncompensated overtime, and plaintiff never told management he was working uncompensated overtime).

Necessarily, it was Frew's responsibility to enter his hours worked into Tolt's payroll software program on a daily basis. [Frew Depo. 16:15 – 17:4; Setzler Depo. 16:25 – 17:8, 33:6 – 35:2] When an employee submits payroll records that reflect a particular number of hours worked, the employer is not charged with knowledge—actual

---

[15]  The fact that Tolt may have evaluated Field Service Technicians based in part on how quickly they resolved service tickets does not warrant a finding that Tolt had constructive knowledge that Frew was underreporting his hours. *See Davis,* 792 F.2d at 1276, 1278 (although employer's "high-pressured system" sometimes resulted in managers working "off-the-clock to make themselves look better," employer was not charged with constructive knowledge of the off-the-clock work); *cf. Brumbelow v. Quality Mills, Inc., 462 F.2d 1324, 1327 (5th Cir. 1972)*, 462 F.2d at 1327 ("The fact that the employer utilizes a minimum required production is not alone enough to impose employer liability to an industrial homework who, in order to maintain her job, understates the number of hours worked.").

or constructive—of any hours allegedly worked that were not recorded.  *Gaylord*, 78 F. Supp. 2d at 1325 ("An employer does not have knowledge of uncompensated overtime when an employee submits time sheets showing such overtime did not occur."); *see also Brumbelow v. Quality Mills, Inc.,* 462 F.2d 1324, 1327 (5th Cir. 1972) (upholding judgment for employer that employee was estopped from claiming more hours than those submitted in time sheets)[16]; *Newton v. City of Henderson*, 47 F.3d 746, 748-49 (5th Cir. 1995) ("Since it was reasonable for [plaintiff's supervisors] to assume that [plaintiff] was taking flex time to compensate for unscheduled hours worked, it was reasonable for [the supervisors] to rely on [plaintiff's] payroll submissions as a reliable indicator of the number of hours being worked by [plaintiff]."); *Davis v. Food Lion,* 792 F.2d 1274, 1277-78 (4th Cir. 1986) (affirming judgment for employer where employee falsified time records to underreport time).

This is especially true when, as in this case, the employee regularly reported overtime hours.  *Nero v. Hosp. Auth. of Wilkes County*, 86 F. Supp. 2d 1214, 1217 (S.D. Ga. 1998) (granting summary judgment for employer who had neither actual nor constructive knowledge of overtime hours because plaintiff "regularly reported overtime but failed to report additional overtime for the same period").  As a matter of policy, to hold otherwise "would essentially be stating that [Tolt] did not have the right to require an employee to adhere to its procedures for claiming overtime."  *Newton*, 47 F.3d at 749-50 (concluding plaintiff "failed to show that the [employer] violated the FLSA by paying him only for the hours claimed on his time sheets").

---

[16]   Decisions by the Fifth Circuit handed down prior to September 30, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981).

**C.      Frew Cannot Sufficiently Demonstrate the Extent of Unrecorded Overtime Hours, if Any**

To prevail on his FLSA claim, Frew also must be able to show how many uncompensated overtime hours he allegedly worked "as a matter of just and reasonable inference." *Allen*, 495 F.3d at 1318; *Strickland v. MICA Info. Sys.*, 800 F. Supp. 1320, 1325 (M.D.N.C. 1992) (to prevail on an FLSA claim for uncompensated overtime hours, the plaintiff must "show the amount and extent of her overtime work as a matter of just and reasonable inference").

Frew claims to have worked five to ten overtime hours off the clock each week. [Frew Depo. 24:16-21]  However, Frew concedes that he never actually kept track of the hours he worked – other than those that he recorded in Tolt's payroll software program. [Frew Depo. 24:13-15; Plaintiff's Responses to Defendant's First Request for Production Nos. 3, 11, 15 (attached hereto as Exhibit "M")].  When asked if he kept track of what he felt were the "actual" hours he worked in any way, he responded, "Did I?  No."  [Frew Depo. 29:1-3]  Frew acknowledges he would be "guessing" even as to the number of hours he did record, and for which he was paid:

> Q.      How many hours were you actually putting down during that period of time [as a full-time employee] as working?
>
> A.      Usually between 40 and 45, would be my guess.

[Frew Depo. 24:13–15]

In reality, Frew recorded, on average, 13.25 hours of overtime each bi-weekly pay period he worked as a full-time Field Service Technician.  [Exhibit "4" to Exhibit "C"]

Frew also admits that for the 45 pay periods he did claim overtime during the relevant time period, he has no idea whether the "extra" five to ten overtime hours he

claims to have worked each week were included in, or in addition to, the overtime hours for which he was compensated:

> Q. And then when you were working full-time there were about five to ten hours a week when you're working overtime?
>
> A. Right.
>
> Q. And you're not getting compensation for?
>
> A. Correct.
>
> Q. Is that in addition to the hours for which you received compensation?
>
> A. I don't know.
>
> Q. Okay.
>
> * * *
>
> A. . . . I can't swear to how many hours I worked.  I would love to check either the . . . GPS log, sorry, or go back and check tickets.
>
> Q. Okay.  Because . . . for example, it looks like during the week . . . ending 12/30/06 you . . . got paid for 46.75 hours of overtime.
>
> A. Correct.
>
> Q. So you're saying there is another five to ten hours of overtime that you worked during that time period that you were not compensated for?
>
> A. I doubt that, but my question would be I'd like to look at the tickets or some kind of documentation before I answer that question. . . .

[Frew Depo. 59:13 - 60:18; Exhibit "4" to Exhibit "C"]

Frew's deposition testimony and discovery responses demonstrate that he has no idea of the number of hours he claims to have worked off the clock, and certainly cannot show the amount and extent of his alleged off-the-clock work "as a matter of just and reasonable inference."  *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th

Cir. 2005) (granting summary judgment in favor of employer where plaintiff offered no evidence she actually worked the 210 hours of claimed unpaid overtime hours); *Strickland*, 800 F. Supp. at 1325 (employer "entitled to summary judgment on the FLSA overtime provision claim" where plaintiff presented no evidence that showed "the amount or extent of her overtime work").

## IV.   <u>CONCLUSION</u>

For all of the foregoing reasons, Tolt respectfully requests that summary judgment be granted in its favor.

RESPECTFULLY SUBMITTED this 28th day of December, 2009.

By: s/ John M. Fry
    Carolann Cervetti Bullock
    Arizona Bar No. 014143
    Michael D. Moberly
    Arizona Bar No. 009219
    John M. Fry
    Arizona Bar No. 020455
    **RYLEY CARLOCK & APPLEWHITE**
    One North Central Avenue, Suite 1200
    Phoenix, AZ  85004-4417
    Telephone:  602/258-7701
    Facsimile:  602/257-9582
    cbullock@rcalaw.com
    mmoberly@rcalaw.com
    jfry@rcalaw.com

    William B. deMeza Jr.
    Florida Bar No. 332348
    **HOLLAND & KNIGHT LLP**
    100 North Tampa Street, Suite 4100
    Tampa, FL 33602-364
    Telephone: 813/227-8500
    Facsimile:  813/229-0134
    bill.demeza@hklaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 28, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I further certify that I mailed a true and correct copy of the foregoing document and the notice of electronic filing by first-class mail, postage prepaid, to:

Carlos V. Leach, Esq.
Morgan & Morgan, P.A.
20 N. Orange Ave., 4th Floor
P.O. Box 4979
Orlando, FL 32802-4979
*Attorney for Plaintiff*


By: s/ Tina Kaminski