UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**STEVEN M. FREW, on His Own Behalf and on
Behalf of Those Similarly Situated,**

           **Plaintiff,**

-vs-                                          Case No. 6:09-cv-49-Orl-19GJK

**TOLT TECHNOLOGIES SERVICE GROUP,
LLC,**

           **Defendant.**

_____

# ORDER

This case comes before the Court on the following:

1. Motion for Summary Judgment by Defendant Tolt Technologies Service Group, LLC (Doc. No. 36, filed Dec. 28, 2009); and

2. Response and Memorandum of Law in Opposition to Defendant Tolt Technologies Service Group, LLC's Motion for Summary Judgment by Plaintiff Steven M. Frew (Doc. No. 40, filed Jan. 29, 2010).

## Background

### I. Procedural History

Plaintiff Steven M. Frew brought this case for unpaid overtime on behalf of himself and those similarly situated against Defendant Tolt Technologies Service Group, LLC ("Tolt") pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (Doc. No. 1, filed Jan. 8, 2009.) On February 4, 2009, Tolt filed an Answer asserting affirmative defenses. (Doc. No. 13.)

On December 28, 2009, Tolt moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Doc. No. 36.) Frew filed a response and a statement of disputed facts in opposition. (Doc. Nos. 40-41.)

## II. Undisputed Facts

Tolt provides technology services to retail chains, including repair services for point-of-sale equipment such as cash registers and printers. (Doc. No. 36-3 at 4-5.) On November 9, 2005, Tolt hired Frew as a part-time Field Service Technician. (Doc. No. 36-4 ¶ 3.) Frew remained in that position until June 20, 2006, when he became a full-time Field Service Technician. (*Id.* ¶ 4.) On August 31, 2008, Frew was laid off. (*Id.* ¶ 5.) Frew returned to work for Tolt as a Temporary Deployment Installer from September 21, 2008 until October 23, 2008. (*Id.* ¶ 6.) In each of these positions, Frew was classified as a nonexempt employee under the FLSA. (*Id.* ¶ 7.)

Frew does not claim unpaid overtime wages for his work as a part-time Field Service Technician or a Temporary Deployment Installer. (Doc. No. 36-5 at 4; Doc. No. 36-13 at 3.) Rather, Frew has limited his claim for unpaid overtime wages to his time as a full-time Field Service Technician from June 20, 2006 until August 31, 2008. During this time period, Tolt paid Frew for 768.58 overtime hours at a rate of one and one-half times his regular hourly wage, which amounts to 13.25 overtime hours per biweekly pay period. (Doc. No. 36 at 9; Doc. No. 36-4 at 69-71.)

Frew's job duties as a Field Service Technician included making service calls and performing preventative maintenance on point-of-sale equipment. (Doc. No. 36-2 at 4-5, 11, 21-22; Doc. No. 36-3 at 10-11.) Frew traveled from his residence each day to customers' stores to perform these tasks. (Doc. No. 36-2 at 19-20.) Frew did not have much contact with his supervisors during the day, he did not report to an office, and he did not have an assigned start time. (Doc. No. 36-3

at 25; Doc. No. 36-2 at 7-9.) However, Frew was responsible for entering his work time into a timesheet computer program on a daily basis. (Doc. No. 36-4 at 6-7.)

Pursuant to Tolt's employee handbook, all "hourly paid" employees were expected to accurately record each day their "time worked," meaning "the time actually spent on the job performing job-related duties." (*Id.*) Tolt's employee handbook also required all overtime to be approved in advance and that nonexempt employees would "receive time and one-half their regular rate of pay for all hours worked over 40 during any one workweek." (*Id.* at 7.) Notwithstanding its policy that all overtime be approved in advance, John Seltzer, a Regional Service Manager for Tolt, testified in his deposition that all nonexempt employees were paid for all overtime hours worked, regardless of whether approval for overtime was obtained in advance. (Doc. No. 36-3 at 23.) Tolt also had a flextime policy under which an employee could be asked to take the rest of the week off when the employee reached 40 hours in order to avoid working overtime. (Doc. No. 36-4 ¶ 8.) In addition, Tolt's employment handbook stated that all nonexempt employees must take a thirty minute unpaid meal break if they work at least five hours in a day. (*Id.* at 6.)

As a full-time Field Service Technician, Frew was scheduled to work five days each week, with two days off. (Doc. No. 36-2 at 11.) Frew testified in his deposition that he regularly reported working between 40 and 45 hours per week as a full-time Field Service Technician although he actually worked between 45 and 55 hours per week and was not compensated for all of the hours he worked. (*Id.* at 12.) Frew asserted that he did not keep track of the hours he actually worked in any way and that he assumed that Tolt kept such a record by reviewing the GPS records of his service vehicle. (*Id.* at 16; Doc. No. 40-1 ¶¶ 13-14.) Frew testified that he decided which overtime hours to report into the system based upon whether there were "projects going on that would involve

expected overtime" and depending upon "how much grief over overtime [he] was getting." (Doc. No. 36-2 at 31.) Frew also maintained that he did not report all of the overtime he worked because he believed he needed "a very good reason" to be paid for overtime work to finish his expected service calls and because his evaluations were partially based on completing service in a timely manner. (*Id.* at 9-10, 30.)

Frew asserted that despite clocking out for lunch for 30 minutes each workday, he only stopped working for a 30-minute lunch approximately 45 times while he worked for Tolt. (*Id.* at 22-23.) Although Frew admitted in his deposition that no one at Tolt ever told him that he was not allowed to stop for lunch, Frew also testified that Tolt expected him to run service calls through lunch. (*Id.* at 23-24.) Frew and Phillip Wilson, another Field Service Engineer for Tolt, averred that Tolt required them to include a 30-minute unpaid lunch break on their time sheets each day even though they routinely took service calls during lunch. (Doc. No. 40-1 ¶¶ 11-12; Doc. No. 40-4 ¶¶ 15-18.) Frew also asserts that he was not paid for a number of service calls that he took on his cell phone before clocking in and that Tolt knew about these calls because it frequently monitored his cell phone records to verify the hours he worked. (Doc. No. 40-1 ¶¶ 17-25.)

Frew and Wilson further averred that time was deducted from their time sheets when Tolt management disagreed with their time entries. (Doc. No. 40-1 ¶¶ 14-15; Doc. No. 40-4 ¶¶ 10-11.) Frew and Wilson maintained that Tolt management frequently and regularly viewed the GPS records of their service trucks and their company cell phone records to verify their actual hours worked. (Doc. No. 40-1 ¶¶ 14-25; Doc. No. 40-4 ¶¶ 10-14.) Outh Chanthaphanith, another Tolt employee, also asserted that Tolt frequently monitored the GPS records of its Field Service Engineers. (Doc. No. 40-5 ¶ 5.)

Frew asserted that he raised the issues of unpaid overtime and unpaid work through lunch breaks during weekly conference calls between the Field Service Technicians and Tolt's management. (Doc. No. 36-2 at 12, 24; Doc. No. 36-9 ¶ 8.) There is no evidence, however, that Frew notified anyone in Tolt's management of the hours he actually worked apart from the hours he entered into his computer time sheet each workday. (Doc. No. 36-2 at 12.)

## II. Parties' Contentions

Frew claims that he was not paid for: (1) work during unpaid lunch breaks; (2) service calls taken on his company cell phone off-the-clock; and (3) overtime hours that he actually worked but did not enter into his computer time sheet. (Doc. No. 40.) Tolt maintains that Frew's willingness to regularly record a substantial amount of overtime completely undermines his claim that he worked uncompensated overtime. (Doc. No. 36 at 12-13.) Tolt further argues that summary judgment should be granted on each of Frew's claims because Tolt had no actual or constructive knowledge of Frew's uncompensated work and because Frew cannot sufficiently demonstrate how much unpaid work he performed. (*Id.* at 14-22.) Frew argues in response that there are genuine issues of material fact as to the amount of overtime he actually worked and whether Tolt knew about his actual work hours from frequently reviewing his GPS and cell phone records. (Doc. No. 40 at 3-4.)

**Standard of Review**

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256,

1259 (11th Cir. 2004). An issue of fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. *Hickson Corp.*, 357 F.3d at 1259. An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.* at 1260. A court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*; *Anderson*, 477 U.S. at 251-52.

The party moving for summary judgment has the burden of proving that: (1) there is no genuine issue as to any material fact, and (2) it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The court may not weigh conflicting evidence or weigh the credibility of the parties. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993). If a reasonable fact finder could draw more than one inference from the facts and that inference creates an issue of material fact, a court must not grant summary judgment. *Id.* On the other hand, summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. In addition, when a claimant fails to produce "anything more than a repetition of his conclusory allegations," summary judgment for the movant is "not only proper but required." *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981).

**Analysis**

**I. FLSA Unpaid Overtime[1] Claims**

The FLSA requires Tolt to pay Frew overtime compensation at a rate not less than one and one-half times his regular rate of pay for hours worked in excess of 40 hours per week. *See* 29 U.S.C. § 207(a)(2)(C). Frew does not dispute that Tolt properly paid him for the hours he reported in his computer time sheet each day. Instead Frew asserts that Tolt failed to pay him for: (1) work performed during unpaid lunch breaks; (2) service calls taken on his cell phone outside of the time he was clocked in; and (3) overtime worked but not reported on his time sheets. (Doc. No. 40.)

For each of these claims, Frew has the burden of proving: (1) he in fact performed work for which he was not properly compensated; and (2) Tolt knew or should have known of the unpaid work. *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1314-15 (11th Cir. 2007). The Court will address each of Frew's three claims for uncompensated work in turn.

**A. Work Performed During Unpaid Lunch Breaks**

**1. Whether Frew Worked Without Proper Compensation**

Because it is undisputed that Frew was paid for all time reflected on his time sheets, each of Frew's claims for unpaid work depends upon the inaccuracy of his time sheets produced by Tolt. Thus, the Court must first determine whether there is a genuine issue of material fact that Frew's time sheets produced by Tolt inaccurately reflect the hours Frew actually worked. *Allen*, 495 F.3d at 1316. Second, the Court must determine if there is sufficient evidence from which a reasonable

---

[1] Because Frew did not always work forty or more hours in a week, (Doc. No. 36-4 at 69-71), it is unclear at this stage of the proceedings whether Frew would receive regular pay or overtime pay if he prevails on his claims for unpaid work during lunch and unpaid service calls taken off-the-clock.

jury could determine the amount and extent of the uncompensated work as a matter of just and reasonable inference. *Id.*

Although it is undisputed Frew kept no record of the his uncompensated work and Frew was responsible for reporting his time daily, (Doc. No. 36-2 at 16; Doc. No. 36-4 at 6-7), the evidence viewed in a light most favorable to Frew calls into question the accuracy of Tolt's time sheets regarding work performed by Frew during unpaid lunch breaks. Frew conceded that no one at Tolt ever told him that he was required to work through his lunch break. (Doc. No. 36-2 at 23-24.) At the same time, however, it may be reasonably inferred from Frew's deposition testimony and averments that Tolt's management expected Frew to run service calls through lunch and required him to enter a 30-minute unpaid lunch break on his time sheet each day even if he worked through lunch. (Doc. No. 36-2 at 23-24; Doc. No. 40-1 ¶¶ 9-12.) Accordingly, there is a genuine issue of material fact as to the accuracy of Tolt's time sheets pertaining to work performed by Frew during unpaid lunch breaks.

Where there is a genuine issue of material fact as to the accuracy of an employer's time records, an employee must show the amount of unpaid work "as a matter of just and reasonable inference," which is a very low burden. *Allen*, 495 F.3d at 1316. As noted by the Eleventh Circuit in *Allen*, if an employer has failed to keep proper and accurate records and the employee cannot offer convincing substitutes:

> [t]he solution . . . is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act.

*Allen*, 495 F.3d at 1315-16 (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)). Applying this standard to reverse the grant of summary judgment to an employer, the panel in *Allen* noted that any inconsistency or uncertainty in an employee's testimony about the number of unpaid hours of work should be tested by cross-examination and left for the jury to consider. *Id.* at 1317. Thus, evidence that GPS records will show where and when Frew was working and Frew's testimony that, except for approximately 45 workdays, he worked through the mandatory 30-minute unpaid lunch break create a genuine issue of material fact as to the number of times Frew worked through lunch as a matter of just and reasonable inference. (Doc. No. 36-2 at 22-24; Doc. No. 40-1 ¶¶ 13-14; Doc. No. 40-4 ¶¶ 9-12.)

### 2. Whether Tolt Knew or Should Have Known of the Unpaid Work

In determining whether there is evidence that Tolt knew or should have known of Frew's work during unpaid lunch breaks:

> [i]t is not relevant that the employer did not ask the employee to do the work. The reason that the employee performed the work is also not relevant. If the employer knows or has reason to believe that the employee continues to work, the additional hours must be counted.

*Allen*, 495 F.3d at 1314 (internal quotations omitted). It is undisputed that Frew did not notify Tolt of the hours he worked other than those he entered into his computer time sheet. (Doc. No. 36-2 at 12.) However, evidence that Tolt frequently verified Frew's work hours through his GPS and cell phone records combined with evidence that Frew raised the issue of unpaid work during lunch breaks at weekly conference calls with Tolt's management creates a genuine issue of material fact as to whether Tolt knew or should have known about Frew's work during unpaid lunch breaks. (Doc. No. 36-2 at 12, 24; Doc. No. 36-9 ¶ 8; Doc. No. 40-1 ¶¶ 14-25; Doc. No. 40-4 ¶¶ 10-14; Doc.

No. 40-5 ¶ 5.) Accordingly, summary judgment should not be granted for Tolt on Frew's claims that he was not properly compensated for work during unpaid lunch breaks.

### B. Service Calls Taken on Frew's Cell Phone Off-the-Clock

#### 1. Whether Frew Worked Without Proper Compensation

As with Frew's claim for uncompensated work during lunch breaks, the Court must first determine whether there is a genuine issue of material fact regarding the inaccuracy of Frew's time sheets produced by Tolt pertaining to service calls Frew took on his company cell phone. *See supra* part I.A.2. Frew's time sheets and cell phone records create a genuine issue of material fact as to whether Frew's time sheets inaccurately reflect the time he spent handling service calls. (Doc. No. 40-1 ¶¶ 18-23; Doc. No. 40-2; Doc. No. 40-3.) That same evidence viewed in the light most favorable to Frew also permits a jury to determine as a matter of just and reasonable inference the amount of time Frew spent handling those service calls without compensation. Thus, there is a genuine issue of material fact regarding whether Frew handled service calls off-the-clock without proper compensation.

#### 2. Whether Tolt Knew or Should Have Known of the Unpaid Work

It is undisputed that Frew was responsible for entering the hours he worked into his computer time sheet and that he did not notify Tolt directly of the hours he took service calls other than those he entered into his computer time sheet. (Doc. No. 36-2 at 12; Doc. No. 36-4 at 6-7.) However, evidence that Tolt frequently verified Frew's reported hours through his company cell phone records creates a genuine issue of material fact as to whether Tolt knew or should have known about Frew's off-the-clock service calls taken on his company cell phone. (Doc. No. 40-1 ¶¶ 14-25; Doc. No. 40-4 ¶¶ 13-14.) The frequency by which Tolt viewed Frew's cell phone records is significant. Tolt's

ability to view Frew's cell phone records, without more, does not permit the inference that Tolt knew or should have known of Frew's off-the-clock service calls because an employer generally may rely upon the accuracy of an employee's self-reported work hours. *See Newton v. City of Henderson*, 47 F.3d 746, 749 (5th Cir. 1995) (holding that an employer does not have constructive knowledge of an employee's actual hours worked merely because the employer has the ability to verify the time reported by the employee). But because there is evidence that Tolt frequently viewed Frew's company cell phone records to verify the hours he reported, it may be inferred that Tolt was actually aware or should have been aware of both over- and under-reporting of time spent working. Although there is no evidence in the record of the precise frequency that Tolt reviewed Frew's cell phone records, a reasonable jury could find that Tolt knew or should have known about Frew's unreported service calls from his cell phone records. Accordingly, summary judgment should not be granted for Tolt on Frew's claims that he was not properly compensated for unreported service calls taken from his company cell phone.

### C. Overtime Not Reported on Frew's Time Sheets

#### 1. Whether Frew Worked Without Proper Compensation

The Court's initial inquiry is whether there is a genuine issue of material fact concerning the accuracy of Frew's time sheets produced by Tolt for overtime hours Frew actually worked other than those hours worked during unpaid lunch breaks and time spent on service calls taken off-the-clock. *See supra* Part I.A.2. Frew's averment that Tolt management once required him to reduce his overtime hours when management "disagreed" about the number of hours he actually worked, without more, does not call into question the accuracy of Frew's time sheets with respect to overtime because there is no evidence that Frew's hours were improperly reduced on that occasion. (Doc. No.

40-1 ¶¶ 15-16.) In addition, Frew's deposition testimony that Tolt discouraged him from working more than 40 hours a week and that Tolt told him that he "did not need to work overtime hours," does not call into question the accuracy of Frew's time sheets because it is not unlawful for an employer to discourage an employee from working overtime. (Doc. No. 36-2 at 7, 29); *Fletcher v. Universal Technical Inst., Inc.*, No. 6:05-cv-585-ORL-31DAB, 2006 WL 2297041, at *6 n.24 (M.D. Fla. Jun. 15, 2006) (citing *Whitaker v. Pac. Enter. Oil Co.*, 956 F.2d 1170, at *1 (10th Cir. 1992) (unpublished)).

Frew testified in his deposition that he regularly reported working between 40 and 45 hours per week as a full-time Field Service Technician although he actually worked between 45 and 55 hours per week and was not compensated for all of the hours he worked. (Doc. No. 36-2 at 12.) However, Frew maintained that he entered only some of his overtime into his computer time sheet because he received "grief" from Tolt management about working overtime, because he believed that some projects would not involve "expected overtime," because he believed he needed "a very good reason" to be paid for overtime work to finish his expected service calls, and because his evaluations were partially based on completing service in a timely manner. (*Id.* at 9-10, 30-31.)

Frew's reasons for entering only some of his overtime into his computer time sheet are analogous to the reasons given by an employee for his incomplete overtime entries in *Bjornson v. Daido Metal U.S.A., Inc.*, 12 F. Supp. 2d 837 (N.D. Ill. 1998). The employee in *Bjornson*, like Frew, was responsible for reporting his time and was paid for every hour of time he reported that was approved by his employer. *Id.* at 840. The employee in *Bjornson* asserted that he did not report all overtime worked because he believed that the corporate culture created an expectation that employees work as long as necessary to complete their assigned tasks without requesting more

money and because he feared a "big hassle" from his employer if he reported all of his overtime. *Id.* at 840. Like the employee's reasoning in *Bjornson*, Frew's subjective reasons for not reporting all of his overtime are belied by the undisputed facts that Frew regularly reported overtime and that subject to verification Tolt always paid Frew for the overtime he reported, averaging 13.25 hours of overtime per pay period as a full-time Field Service Engineer. *Id.* at 840-41; (Doc. No. 36 at 9; Doc. No. 36-4 at 69-71.) In *Bjornson*, the court granted summary judgment for the employer on the employee's claim for unpaid overtime because the employee's unsupported, post-hoc explanation for not completely reporting his overtime hours, without more, did not permit a reasonable inference that the employee actually worked overtime hours that he did not report on his time sheet. *Id.* at 842.

Although *Bjornson* is not binding on this Court, it is well reasoned. An employee's post-hoc explanation for not completely reporting the overtime he worked, absent any supporting evidence, cannot negate the reliance an employer reasonably places on an employee's self-reported work hours. *Newton*, 47 F.3d at 749. This Court, however, cannot reach the same result as the court in *Bjornson* because there is evidence in this case other than Frew's post-hoc explanation for not completely reporting his overtime that permits a reasonable inference that Frew's time sheets do not accurately reflect all of the overtime he worked. It may be reasonably inferred from Frew's complaints to Tolt's management during weekly conference calls about uncompensated overtime and the GPS records of Frew's service truck that Frew worked more overtime hours than those overtime hours which he reported. (Doc. No. 36-2 at 12, 16, 33; Doc. No. 40-1 ¶¶ 13-14; Doc. No. 40-4 ¶¶ 9-12; Doc. No. 40-5 ¶¶ 5-14.) In addition, Frew's GPS records and time sheets could permit a jury to determine as a matter of just and reasonable inference the amount of uncompensated

overtime worked by Frew.  *See supra* part I.A.1.  Thus, there is a genuine issue of material fact whether Frew's time sheets produced by Tolt inaccurately reflect the overtime Frew actually worked..

### 2. Whether Tolt Knew or Should Have Known of the Unpaid Work

Tolt's ability to verify the overtime Frew reported by viewing the GPS records of his service vehicle, without more, does not create a genuine issue of material fact that Tolt knew or should have known about overtime hours that Frew did not report on his time sheet.  *See supra* part I.B.2.  However, evidence that Tolt frequently and regularly verified Frew's reported overtime using his vehicle's GPS records and evidence that Frew lodged complaints about uncompensated overtime during weekly conference calls create a genuine issue of material fact as to whether Tolt knew or should have known that Frew worked unreported overtime.  (Doc. No. 36-2 at 12, 24; Doc. No. 40-1 ¶¶ 13-14; Doc. No. 40-4 ¶¶ 9-12; Doc. No. 40-5 ¶¶ 5-14.)  It may be reasonably inferred from this evidence that Tolt was aware or should have been aware of both over- and under-reporting of Frew's overtime.  *See supra* part I.B.2.  Accordingly, summary judgment should not be granted for Tolt on Frew's FLSA claim for uncompensated overtime not reported on his time sheets.

## II. Defenses Asserted by Tolt

### A. Statute of Limitations

Frew did not file the Complaint until January 8, 2009.  (Doc. No. 1.)  Tolt argues that Frew cannot recover for unpaid wages earned prior to January 8, 2007, because the applicable statute of limitations is two years.  (Doc. No. 36 at 4, 15.)

The statute of limitations for FLSA violations is two years, except willful violations may be filed within three years.  29 U.S.C. § 255(a).  "A willful violation may be found when the employer

disregarded the very possibility that it was violating the statute." *Allen*, 495 F.3d at 1323 (internal quotations omitted). Thus, the three-year statute of limitations may apply even when the employer did not knowingly violate the FLSA. *Id.* at 1324. On the other hand, "[i]f an employer acts unreasonably but not recklessly in determining its legal obligation under the FLSA, then its actions should not be considered willful and the two-year statute of limitations should be applied." *Id.* The Court now turns to the evidence to determine if there is a genuine issue of material fact as to whether Tolt willfully violated the FLSA.

Because it may be reasonably inferred that Tolt instructed Frew to report an unpaid 30-minute lunch break every day knowing that he worked through lunch and that Tolt knew the hours Frew actually worked from his cell phone and GPS records, a genuine issue of material fact exists as to whether Tolt recklessly disregarded its obligations under the FLSA or merely acted unreasonably in failing to pay Frew for work during unpaid lunch breaks and for off-the-clock phone calls. (Doc. No. 36-2 at 12, 24; Doc. No. 36-9 ¶ 8; Doc. No. 40-1 ¶¶ 14-25; Doc. No. 40-4 ¶¶ 10-14; Doc. No. 40-5 ¶ 5.) Accordingly, summary judgment should not be granted for Tolt on its statute of limitations affirmative defense.

### B. Intentional Concealment of Off-the-Clock Work

Tolt argues that Frew intentionally concealed any unreported work, and thus he should not be allowed to recover pay for those hours under the FLSA. (Doc. No. 36 at 17-18.)

"There is no violation of the FLSA where the employee performs uncompensated work but deliberately prevents his or her employer from learning of it." *Allen*, 495 F.3d at 1319 (citing *Forrester v. Foodliner*, 646 F.2d 413, 414 (9th Cir. 1981)). A reasonably jury could conclude from the evidence viewed in the light most favorable to Frew that he did not deliberately conceal his

hours from Tolt. It may reasonably be inferred from Tolt's frequent verification of Frew's reported hours using his GPS and company cell phone records that Frew did not deliberately conceal his actual work hours from Tolt. (Doc. 36-2 at 16; Doc. No. 40-1 ¶¶ 14-25; Doc. No. 40-4 ¶¶ 10-14; Doc. No. 40-5 ¶ 5.) It also may be inferred from the complaints lodged by Frew during the weekly conference calls that he did not deliberately conceal from Tolt that he worked during unpaid lunch breaks or that he worked unreported overtime. (Doc. No. 36-2 at 12, 24.) Thus, the Court will not grant summary judgment for Tolt on the grounds that Frew deliberately prevented Tolt from learning of uncompensated work.

### C. Collective Action

Frew initially filed this case on behalf of himself and those similarly situated pursuant to 29 U.S.C. § 216(b). (Doc. No. 1 ¶ 1.) As of the date of this Order, no plaintiffs other than Frew have been named in this case. Accordingly, the allegations in the Complaint pertaining to a collective action should be dismissed. *See, e.g.*, *Varela v. Innovative Wiring Solutions, LLC*, No. 6:07-cv-165-Orl-28KRS, 2009 WL 1795044, at *1 (M.D. Fla. Jun. 22, 2009); *Cummings v. Lapel Pins R Us, LLC*, No. 6:06-cv-1108-Orl-28KRS, 2007 WL 1549247, at *1 (M.D. Fla. May 24, 2007).

### Conclusion

Based on the foregoing, the allegations in the Complaint (Doc. No. 1) pertaining to a collective action are **DISMISSED without prejudice**, and the Motion for Summary Judgment by Defendant Tolt Technologies Service Group, LLC (Doc. No. 36) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on February 10, 2010.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record